Entered on Docket
September 29, 2009
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Not for Publication

Signed: August 14, 2009

_____
**RANDALL J. NEWSOME**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| In re Gregory P. Sieben and Susan D. Haas,<br><br>                Debtors.<br>_____<br>Kimberly Sweidy and Raymie Stata,<br><br>                Plaintiffs,<br><br>     v.<br><br>Gregory P. Sieben,<br><br>                Defendant.<br>_____ | Case No. 04-43339<br><br>Chapter 7<br><br><br><br>Adv. Pro. No. 08-4037<br><br><br><br><br><br>**FINDINGS OF FACT, OPINION**<br><br>**AND CONCLUSIONS OF LAW** |

       This adversary proceeding is before the Court pursuant to a trial on the merits held on February 9 and 10, 2009, on a complaint filed by Kimberly Sweidy and Raymie Stata (herein collectively "Sweidy") asserting causes of action against the Debtor to determine the dischargeability of a debt pursuant to 11 U.S.C. §523(a)(2)(A); §523(a)(3)(B) and §523(a)(6). At the conclusion of that trial, the court issued a tentative ruling in favor of Sweidy, and requested that the parties provide further post-trial briefing on issues concerning an award of attorneys' fees and costs. After reviewing those briefs and the applicable law, the Court reaffirms its tentative ruling, and submits the following findings of fact, opinion and conclusions

of law.[1]

## FINDINGS OF FACT[2]

On or about June 23 and December 8 of 2003, Sweidy contracted with the Debtor to demolish an existing structure on Sweidy's property and to build a new house in its place. (Plaintiff Exs. 1 and 2; Transcript ("TR"), vol. I at 88-89). Pursuant to such contracts, Sweidy paid a total of $458,531.18, which included $6,458.50 for reimbursement of costs alleged to have been incurred by Fine Homeworks, Inc., prior to execution of the June 23, 2003 contract.[3] Sweidy paid all of the invoices on the project sent by the Debtor except for a final invoice in the amount of $39,056.08. (Plaintiff Exs. 4-16; 17-27; TR, vol. I at 87-88, 97-98). The invoices paid by Sweidy included amounts for work performed by subcontractors, including IMX, Rogelio Esqueda and Truitt & White. The Debtor did not, however, pay these subcontractors for some or all of the work as stated on the invoices. (TR vol. II at 78).[4] Additionally, some of the invoices overcharged Sweidy by 5 to 10 percent, and other invoices overcharged by about 25 percent. (TR vo. I at 228-236, 247-248). On or about March 21, 2004, Sweidy terminated the Debtor's involvement on the project. (Plaintiff Ex. 60; TR, vol. I at 85, 99-100).

On June 15, 2004, the Debtor filed this case under chapter 7 of the Bankruptcy Code.

---

[1] The Court's tentative ruling as stated on the record at the conclusion of the trial is wholly incorporated here. *See,* TR vol. II at 118 to 147. Upon conclusion of the post-trial briefing, on May 7, 2009, the Debtor filed a *Statement of Conditional Non-Opposition to the Tentative Judgment* (doc. 46), conditioned upon the Debtor reserving his right to file an opposition to any challenge to the tentative ruling filed by Sweidy. An opposition from Sweidy to the tentative ruling is not on file.

[2] The findings of fact largely follow the *Joint Stipulation of Facts and Authenticity of Exhibits* submitted by the parties at trial, and are not disputed to any significant extent.

[3] Fine Homeworks, Inc., a building contractor company owned by the Debtor, worked on the Sweidy project. On June 15, 2004, Fine Homeworks filed bankruptcy case 04-43336 under chapter 7 of the Bankruptcy Code. (TR vol. I at 252, 255-256; *In re Fine Homeworks, Inc.*, 04-43336, doc. 1)

[4] IMX recorded a $96,340 mechanics lien against the property and filed a complaint in Superior Court against Sweidy to foreclose on its mechanics lien (herein the "IMX Action"). Truitt & White recorded an amended mechanic's lien for $2,762.85 against the property, and Rogelio Esqueda threatened to do so. (Plaintiff Exs. 34, 35 and 40). Sweidy eventually paid IMX $20,000 to settle the IMX Action. Sweidy also paid Truitt & White $1,500 to settle its mechanics lien, and paid Rogelio Esqueda $1,500 in settlement to avoid the recordation of a mechanics lien. (Plaintiff Exs. 36-37; 41-44; 45-46; TR vol. I at 110-111).

(*Petition*, doc. 1). Sweidy was not included among the 21 creditors on the initial creditor matrix attached to and filed with the petition. Consequently Sweidy does not appear on the June 19, 2004 service list for the *Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, and Deadlines*. The *Notice of Chapter 7 Bankruptcy Case* noticed September 13, 2004 as the deadline to file a complaint objecting to the entry of a discharge or to determine the dischargeability of certain debts. (docs. 1, 5 and 6). Thereafter, on July 6, 2004, the Debtor filed a statement of financial affairs, bankruptcy schedules and a more extensive creditor matrix list, which listed the name and an address for Sweidy (docs. 10 and 11).[5] On September 17, 2004, a discharge order entered in this case. Sweidy does not appear on the service list for the discharge order.[6] On September 23, 2004 this case was closed. On November 4, 2004, Sweidy first learned that the Debtor had filed this bankruptcy case. (TR vol. I at 101). On March 4, 2008, Sweidy filed this adversary proceeding.

## OPINION AND CONCLUSIONS OF LAW

Prior to November 11, 2004, Sweidy did not have notice or actual knowledge of this bankruptcy case in time to permit the filing of a complaint to determine the dischargeability of a debt before the September 13, 2004 deadline. Additionally, the Debtor has not shown extraordinary circumstances or a compelling reason for the defense of laches to bar the filing of

---

[5] Pursuant to Federal Rule of Bankruptcy Procedure 1009(a), unless otherwise ordered by the court after notice and a hearing on a motion filed by a party in interest, which did not occur here, the debtor is responsible for noticing creditors affected by an amendment to the matrix list. After filing the July 6, 2004 creditor matrix, such notice by the Debtor does not appear on the docket in this case.

[6] The creditor list filed on July 6, 2004 contained over 200 creditor names and addresses. It was not, however, titled as an amendment or accompanied by the document amendment fee and, most importantly, the then required computer disk containing the creditor names and addresses was not provided to the clerk. As such, the creditor names and addresses on the July 6, 2004 filing were not added to the matrix, and so notice of the discharge was sent only to those creditors appearing on the original June 15, 2004 matrix, along with certain additional parties having requested special notice, taxing authorities, the trustee and the Debtors (docs. 21 and 22). For this same reason, notice of the August 31, 2005 *Order Granting the Debtor's Motion to Reopen Case* (docs. 31 and 32) was also sent only to those creditors appearing on the original June 15, 2004 matrix. On September 12, 2005, the Debtor properly filed an amended list of creditors, and the matrix was then amended to reflect the current 245 listed creditors. Thereafter, however, the only activity in the case was a September 14, 2005 request for notice, and a January 24, 2006 notice of correction of address, both filed by Sweidy (docs. 34 and 35). On September 27, 2006 an order entered to re-close the case (doc. 36).

3

this adversary proceeding. Accordingly, this adversary proceeding was filed timely pursuant to §523(a)(3)(B). (TR, vol. II at 119-121); *In re Beaty*, 306 F.3d 914, 928 (9th Cir. 2002); *In re Staffer*, 306 F.3d 967 (9th Cir. 2002).

A preponderance of the evidence establishes that in presenting invoices for payment on the project, the Debtor knowingly made false representations to Sweidy that certain subcontractors were being reimbursed from Sweidy's payment of the invoices, since such subcontractors were not being paid at all or were paid only partially for the work asserted by the invoices. The Debtor made such false representations with the intent to deceive Sweidy. Sweidy justifiably relied upon the Debtor's false representations, and as a proximate cause of such reliance incurred damages. Additionally, a preponderance of the evidence establishes that the Debtor committed actual fraud in overcharging Sweidy on certain of the invoices, for which Sweidy also incurred damages. Finally, a preponderance of the evidence also shows that as to such false representations and certainly the overcharging, the Debtor's conduct was objectively certain to injure Sweidy, and in fact did so, and was intentionally done without just cause and/or excuse. Such damages, not including attorneys' fees, total $129,987, and pursuant to §523(a)(2)(A), §523(a)(6) and §523(a)(3)(B), are found to be non-dischargeable in this bankruptcy case. (TR, vol. II at 121-128); *In re Slyman*, 234 F.3d 1081, 1085 (9th Cir. 2000); *Recover Edge, L.P., v. Pentecost* 44 F.3d 1284, 1293 (5th Cir. 1995), cited with approval in *In re Eashai*, 87 F.3d 1082, 1089 (9th Cir. 1996); *In re Su*, 290 F.3d 1140 (9th Cir. 2002).

**Recovery of Attorneys' Fees and Costs as Damages**

Attorneys' fees and costs arising from the Debtor's fraudulent conduct established pursuant to §523(a)(2) are excepted from discharge. *Cohen v. De La Cruz*, 523 U.S. 213, 218, 223 (1998); *Ghomeshi v. Sabban (In re Sabban)*, 384 B.R. 1, 6-7 (9th Cir. BAP 2008). Similarly, attorneys' fees and costs arising from a debtor's willful and malicious conduct established pursuant to §523(a)(6) are also excepted from discharge. *Bertola v. Northern Wisconsin Produce Company, Inc. (In re Bertola)*, 317 B.R. 95, 100 (9th Cir. 2004). In such instances, the

determinative question is whether the successful plaintiff could recover such fees and costs in a non-bankruptcy court, and in the instant case pursuant to applicable California law. *In re Bertola*, at 100; *AT&T Universal Card Services, Corp., v. Pham (In re Pham)*, 250 B.R. 93, 99 (9th Cir. BAP 2000).

Pursuant to California law, the "tort of another" doctrine provides that when a person is required to institute or defend an action against a third person as a direct result of the tort of another, attorneys' fees and costs incurred in such an action are recoverable as damages. *Third Eye Blind, Inc. v. Near North Entertainment Insurance Services*, 127 Cal. App. 4th 1311, 1324-1325 (2005); *Prentice v. North American Title Guaranty Corp.*, 59 Cal.2d 618, 620 (1963). The "tort of another" doctrine does not apply, however, where the action against the third person is unrelated to or independent of another's wrongdoing and not a natural and proximate consequence of the tort. *Flyer's Body Shop Profit Sharing Plan v. Ticor Title Ins. Co.*, 185 Cal. App.3d 1149, 1156-1157 (1986). Moreover, the doctrine does not apply when two defendants jointly commit a tort and "one [joint tortfeasor's] conduct caused the plaintiff to pursue an action against the other [joint tortfeasor]." *Electrical Electronic Control, Inc. v. Los Angeles Unified School District,* 126 Cal. App.4th 601, 617 (2005); *Ashley v. Church (In re Ashley)*, 903 F.2d 599, 605 (9th Cir. 1992).

Additionally, if a contract provides for an award of attorneys' fees incurred to enforce the contract, California Civil Code §1717 provides that the prevailing party shall be entitled to an award of reasonable attorneys' fees. Section 1717, however, applies only to attorneys' fees incurred to litigate contract claims, and does not apply to award such fees incurred to litigate tort claims, such as the claims litigated here. *See, Santisas v. Goodin*, 17 Cal. 4th 599, 615 (1998); *In re Davison*, 289 B.R. 716, 723-725 (9th Cir BAP 2003).[7] An agreement between the parties, however, may otherwise provide for an award of attorneys' fees incurred to litigate tort claims.

---

[7] Here, the complaint asserts only claims of non-dischargeability based upon torts for actual fraud and willful and malicious injury. As such, §1717 does not apply. *See, In re Davison*, 289 B.R. at 724 (§1717 does not apply to dischargeability claim based upon fraud).

5

In such instance, courts "look to the language of the agreement to determine whether an award of attorneys' fees is warranted in a tort action." *In re Davison*, 289 B.R. at 724; citing, *3250 Wilshire Boulevard Building v. W.R. Grace & Company*, 990 F.2d 487, 489 (9th Cir. 1993); Cal. Code Civ. Pro. §1021.

Sweidy asserts a total of $422,247.28 in attorneys' fees and costs incurred for services performed by five separate law firms as arising from the Debtor's fraudulent conduct.[8] Sweidy asserts that the fees and costs of Last & Faoro and Thelen Reid & Priest (herein "Thelen") are recoverable pursuant to the "tort of another" doctrine for work incurred to litigate the IMX Action, the Rogelio Esqueda and Truitt & White mechanics liens, and a claim against the Gulf Insurance Company to collect on the Debtor's construction bond. Sweidy asserts that the remaining fees and costs, attributable to Neal H. Konami ("Konami"), Dewey & LeBoeuf and Morgan Miller Blair were incurred to investigate and prosecute this adversary proceeding, and are recoverable pursuant to an indemnification provision found in Section 8.13.1 of the June 23, 2003 contract. (docs. 40 and 41; Plaintiff Ex. 1).

### *The Konami, Dewey & LeBoeuf and Morgan Miller Blair Fees and Expenses*

The attorneys' fees and costs attributable to Konami, Dewey & LeBoeuf and Morgan Miller Blair, are asserted to be recoverable pursuant to Section 8.13.1 of the June 23, 2003 contract. As such, the Court must consider the language of Section 8.13.1 "to determine whether an award of attorneys' fees is warranted in a tort action." *In re Davison*, 289 B.R. at 724. Section 8.13.1 provides, in relevant part, that the Debtor shall indemnify and hold Sweidy harmless:

> from and against claims damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expenses is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other

---

[8] Sweidy's asserted attorneys' fees and costs are broken-down as: Last & Faoro $8,387.21; Thelen Reid & Priest $89,747.23; Neal H. Konami $31,111.75; Dewey & LeBoeuf $97,541.36; and Morgan Miller Blair $195,459.73. (doc. 41 at 1-2, Exs. A-E).

6

> than the Work itself), but only to the extent caused by the negligent acts or omissions of [the Debtor], a Subcontractor, anyone directly or indirectly employed by them or anyone from whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.

(Plaintiff Ex. 1). Section 8.13.1 is narrow in scope, providing for the Debtor to indemnify Sweidy for attorneys' fees *if* such fees are attributable to a bodily injury, sickness, disease or death, or to the destruction of or an injury to certain tangible property, *but only* to the extent caused by the Debtor's negligence. The litigation and adjudication of this adversary proceeding did not involve negligent acts or omissions on the part of the Debtor, but rather tort claims based upon the Debtor's knowing and intentional conduct. Additionally, here Sweidy was found to have been injured by the Debtor's conduct, but such did not cause Sweidy to incur a bodily injury, sickness, disease or death. Sweidy's injury was strictly monetary, based upon having paid for work on the project the Debtor fraudulently stated had been performed, and work for which the Debtor intentionally overcharged. Moreover, no tangible property was found to have been injured or destroyed by the Debtor's conduct. As such, Section 8.13.1 does not provide a basis for an award of attorneys' fees and costs in this adversary proceeding.

### *The Last & Faoro and Thelen Fees and Costs*

The Court finds that Sweidy's retention of Last & Faoro and the Thelen firm to litigate the IMX complaint, the other mechanics liens and the Gulf Insurance bond payment, was necessary and reasonable to protect Sweidy's interest in the property, and was a direct result of the Debtor's fraudulent conduct. As such, the "tort of another" doctrine may apply, and reasonable attorneys' fees and costs thereby incurred may be recoverable as damages and excepted from discharge under §523(a)(2)(A). *See*, *Bell v. Smith (In re Smith)*, 232 B.R. 461, 468 (Bankr. D. Idaho1998); *In re Bertola*, 317 B.R. at 103 ("tort of another" doctrine applicable to attorneys' fees and costs resulting from fraud established pursuant to §523(a)(2)).

As to Last & Faoro, Sweidy filed time entries totaling $9,522.21, asserts to have paid Last & Faoro $9,507.21, and states that $1,120 of this amount was for work unrelated to the

7

Debtor, leaving $8,337.21 asserted as to have been related to matters involving the Debtor. Sweidy did not segregate entries applicable to the "tort of another" doctrine from entries that are not applicable. (doc. 41, Ex. A). Upon review, however, certain entries plainly do not come within the doctrine. Fees and costs of $185.75 to prepare and file a proof of claim in this bankruptcy case (*Id.*, at Invoice 16193), and $491.12 to respond to a request for documents from the California Contractor State Licensing Board (*Id.*, at Invoice 17250), do not come within the "tort of another" doctrine, as such charges were incurred for services rendered litigating against the Debtor, and not against a third person as the doctrine requires. Additionally, the Court finds that $1,680 billed to the general category of "93 Broad Acres Road" (*Id.*, at Invoices 14449, 15467, and 16012) lack sufficient detail to ascertain whether the "tort of another" doctrine applies, and on that basis are disallowed. The aforementioned totals $2,356.87 and 10.05 hours. Deducting that amount from $9,507.21 results in attorneys' fees and costs of $7,150.34 for services performed by Last & Faoro attributable to the mechanics liens and Gulf Insurance bond payment, and recoverable as damages.

Similarly, time entries documenting the services of Thelen (doc. 41, Ex. B), are also not segregated, and facially several plainly do not come within the "tort of another" doctrine. Fees totaling $2,436.25 for 6.125 hours (*Id.*, at Invoice 6885206, entries dated 3/10/05; 3/11/05; 3/16/05) to discuss and research the scope of the Debtor' bankruptcy discharge, the status of the Debtor's bankruptcy case and that of Fine Homeworks, possible bankruptcy crimes and a revocation of the discharge, do not come within the "tort of another" doctrine as such charges are for services rendered to litigate against the Debtor.[9] Additionally, a portion of the Thelen time entries concern the litigation of a cross-complaint filed by Sweidy against IMX and its corporate president in the IMX Action. The cross-complaint (Defendant Ex. I) asserts three causes of

---

[9] In addition to unsegregated time entries, some individual time entries similarly clump together tasks that may come within the "tort of another" doctrine with other tasks that do not. In such instance, the entry was pro rated to determine an amount not applicable to the "tort of another" doctrine. (See for example, doc. 41 Ex. B, Invoice 6885206 entry dated 3/11/05).

8

action: one for breach of contract alleging defective work performed on the project and billing for unperformed work, a second for conspiring with the Debtor as an alleged joint tortfeasor to defraud Sweidy on funds paid on the invoices, and a third for fraudulent, unlawful and unfair business practices under California Business and Professions Code §17200 *et seq*. Such causes of action could have been asserted against IMX independent of the Debtor's fraud, and/or involve IMX as a joint tortfeasor with the Debtor. As such, the "tort of another" doctrine does not apply to allow recovery of fees and costs incurred to prosecute the IMX cross-complaint. *Flyer's Body Shop* 185 Cal. App.3d at 1156-1157; *Electrical Electronic Control,* 126 Cal. App.4th at 617. Time entries totaling 21.06 hours and fees of $7,055.56, specifically mention and wholly or partially bill for tasks concerning the cross-complaint or the answer to the cross-complaint, and are not recoverable as damages. (doc. 41, Ex. B, Invoices 688520 and 6892257, entries dated 3/11/05 to 3/31/05 and 5/2/05 to 5/10/05).

      The Court finds, however, that defending against the complaint filed in the IMX Action was necessary and reasonable and resulted directly from the Debtor's fraudulent conduct. As such, reasonable attorneys' fees and costs incurred to defend against the complaint are recoverable under the "tort of another" doctrine, and may be excepted from discharge under §523(a)(2)(A). In considering the Thelen time entries, however, separating the non-recoverable fees and costs attributable to the cross-complaint from those recoverable for defending against the complaint, is problematic. Services and costs billed, for example, for research, conducting discovery, drafting pleadings, court appearances and numerous similar items, inherently intertwine litigation of the complaint and the cross-complaint. As such, the Court finds that allocating one half of the allowed fees and costs billed by Thelen to the defense of the complaint comprises a reasonable award. Accordingly, the $89,747.23 billed on the Thelen time entries, less the $2,436.25 and $7,055.56 for entries facially not within the scope of the "tort of another" doctrine, and then divided in half, results in $40,127.71 of attorneys' fees and costs attributable to defending against the IMX complaint, and recoverable as damages. *See, Dawson v.*

9

*Washington Mutual Bank (In re Dawson)*, 390 F.3d 1139 1152-1153 (9th Cir. 2004) *cert. denied* 546 U.S. 927 (2005) (5% pro rata allocation of unsegregated attorneys' fees and costs to percentage of litigation for which such fees and costs may be recovered is within discretion of the bankruptcy court); and *Stinson v. Bi-Rite Restaurant Supply, Inc. (In re Stinson)*, 295 B.R. 109, 118-119 (9th Cir. BAP 2003), *aff'd in part and rev'd in part* 128 Fed. Appx. 30, 2005 WL 736668 (9th Cir. 2005) (same with 20% pro rata allocation). In accordance with the foregoing, the Court finds that attorneys' fees and costs of $7,150.34 attributable to Last & Faoro, plus $40,127.71 attributable to Thelen, totals $47,278.05 and is recoverable under the "tort of another" doctrine as damages in this adversary proceeding.[10]

## CONCLUSION

The damages of $129,987 previously found at trial, plus attorneys' fees and costs of $47,278.05, totals $177,265.05. In accordance with the foregoing, $177,265.05 owed by the Debtor to Sweidy is hereby found to be non-dischargeable in this bankruptcy case.

**IT IS SO ORDERED**.

**END OF ORDER**

---

[10] The Thelen time entries total 263 hours. Divided in half and then deducting for the 27.185 of hours attributable to the disallowed entries results in about 104.3 hours attributable to defending against the IMX complaint. The Last & Faoro time entries total 34.35 hours, and after deducting the 10.05 hours attributable to disallowed entries results in 24.3 hours for billed services that come within the "tort of another" doctrine. The Court finds such hours from Thelen covering a 7 month period at hourly rates of $175 to $410, and from Last & Faoro over 14 months at the hourly rates of $120 to $250, to be reasonable. *See, In re Dawson*, 390 F.3d 1139, 1152-1153 (9th Cir. 2004) (within discretion of bankruptcy court to consider hours expended and rate charged in considering reasonable fee).

| | |
|---|---|
| 1 | COURT SERVICE LIST |
| 2 | |
| 3 | C. Randall Bupp |
| | Bardellini, Straw, Cavin and Bupp |
| 4 | 2000 Crow Canyon Pl. #330 |
| | San Ramon, CA 94583 |
| 5 | |
| | Michael K. Brown |
| 6 | Kevin R. Brodehl |
| | Morgan Miller Blair |
| 7 | 1331 N California Blvd. #200 |
| | Walnut Creek, CA 94596-4544 |
| 8 | |
| | Office of the U.S. Trustee |
| 9 | 1301 Clay St. #690N |
| | Oakland, CA 94612 |

11